UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS NATIVIDAD, | No.  2:14-cv-01670-MCE-DAD |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| OCWEN LOAN SERVICING, LLC; RESIDENTIAL CREDIT SOLUTIONS, INC.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; SAGE POINT LENDER SERVICES, LLC AND U.S. BANK NATIONAL ASSOCIATION, as Trustee, as Successor in Interest to DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee for MORTGAGEIT TRUST 2005-AR1, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-AR1 and DOES 1-100 inclusive, | |
| Defendants. | |

On June 16, 2014, Plaintiff Jesus Natividad ("Plaintiff") filed this lawsuit in San Joaquin County Superior Court against Ocwen Loan Servicing LLC, Residential Credit Solutions, Inc., Mortgage Electronic Registration Systems, Inc., Sage Point Lender Services, LLC, and U.S. Bank National Association, as Trustee, as Successor in Interest to Deutsche Bank National Trust Company, as Trustee for Mortgageit Trust 2005-AR1, Mortgage Pass-Through Certificates, Series 2005-AR1 (collectively

1    "Defendants").  On July 15, 2014, Defendants removed the action to this Court pursuant

2    to 28 U.S.C. § 1441(b) and subsequently filed a Motion to Dismiss (ECF No. 4).  On

3    August 14, 2014, Plaintiff filed a Motion to Remand, arguing that this Court lacks

4    jurisdiction to hear the case.  For the following reasons, Plaintiff's Motion to Remand

5    (ECF No. 12) is GRANTED, and Defendants' Motion to Dismiss is DENIED as moot.[1]

6

7                                          **BACKGROUND**

8

9          On June 16, 2014, Plaintiff initiated this lawsuit by filing a verified complaint in

10   San Joaquin Superior Court.  ECF No. 1-2.  The Complaint asserts state law causes of

11   action for declaratory relief, violation of Cal. Civil Code section 2923.6(c) and (d),

12   violation of Cal. Civil Code section 2923.7, violation of Bus. & Profs. Code section 17200

13   <u>et seq.</u>, negligence, fraud, unjust enrichment, and intentional/negligent infliction of

14   emotional distress.  <u>Id.</u>  Plaintiff contends that none of the named Defendants have

15   standing to sell his house in foreclosure or to collect monthly mortgage payments from

16   him.  <u>Id.</u> at 3.  In addition, Plaintiff alleges that Defendants unlawfully participated in

17   "dual-tracking" by pursuing loan modifications with Plaintiff and simultaneously pursuing

18   foreclosure activity.  <u>Id.</u>

19         On June 20, 2014, while the case was still pending in San Joaquin Superior

20   Court, Defendant Sage Point Lender Services, LLC ("Sage Point") filed a Declaration of

21   non-Monetary Status ("DNMS") pursuant to Cal. Civil Code section 2924l.  <u>See</u> ECF

22   No. 1-3.  In the DNMS, Defendant Sage Point contended it had been named in the state

23   court action solely in its capacity as Trustee.  <u>Id.</u> at 3.  On July 9, 2014, Plaintiff filed an

24   Opposition to the DNMS.  ECF No. 1-4.  Subsequently, on July 15, 2014, Defendants

25   removed the action to this Court pursuant to 28 U.S.C. § 1441(b), asserting diversity

26   jurisdiction.  Plaintiff filed his Motion to Remand on August 14, 2014, arguing that

27   _____

28          [1] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Cal. Local Rule 230(g).

1   complete diversity does not exist because Defendant Sage Point and Plaintiff are both

2   citizens of California.  ECF No. 12 at 11.  Plaintiff's Motion to Remand is GRANTED.

3

4                                    **STANDARD**

5

6          When a case "of which the district courts of the United States have original

7   jurisdiction" is initially brought in state court, the defendant may remove it to federal court

8   "embracing the place where such action is pending."  28 U.S.C. § 1441(a).  There are

9   two bases for federal subject matter jurisdiction: (1) federal question jurisdiction under

10  28 U.S.C. § 1331; and (2) diversity jurisdiction under 28 U.S.C. § 1332.  A district court

11  has federal question jurisdiction in "all civil actions arising under the Constitution, laws,

12  or treaties of the United States."  Id. § 1331.  A district court has diversity jurisdiction

13  "where the matter in controversy exceeds the sum or value of $75,000, . . . and is

14  between citizens of different states, or citizens of a State and citizens or subjects of a

15  foreign state . . . ."  Id. § 1332(a)(1)-(2).  Diversity jurisdiction requires complete diversity

16  of citizenship, with each plaintiff being a citizen of a different state from each defendant.

17  Id.; Caterpillar, Inc. v. Lewis, 519 U.S. 61, 68 (1996) (stating that complete diversity of

18  citizenship is required).

19         A defendant may remove any civil action from state court to federal district court if

20  the district court has original jurisdiction over the matter.  28 U.S.C. § 1441(a).  "The

21  party invoking the removal statute bears the burden of establishing federal jurisdiction."

22  Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988) (citing Williams v.

23  Caterpillar Tractor Co., 786 F.2d 928, 940 (9th Cir. 1986)).  Courts "strictly construe the

24  removal statute against removal jurisdiction."  Gaus v. Miles, Inc., 980 F.2d 564, 566

25  (9th Cir. 1992) (internal citations omitted).  "[I]f there is any doubt as to the right of

26  removal in the first instance," the motion for remand must be granted.  Id.  Therefore, "[i]f

27  at any time before final judgment it appears that the district court lacks subject matter

28  jurisdiction, the case shall be remanded" to state court.  28 U.S.C. § 1447(c).

1
2

**ANALYSIS**

3     Plaintiff brings his motion to remand on the grounds that he and Defendant Sage
4  Point are both citizens of California and that consequently diversity of citizenship is
5  lacking.  Defendants disagree, taking the position that Defendant Sage Point's filing of
6  the DNMS in state court means that Sage Point's citizenship should be disregarded in
7  determining diversity.  Alternatively, according to Defendants, Sage Point was added as
8  a sham or fraudulent defendant in any event, with its citizenship properly disregarded on
9  that basis as well.  In response, Plaintiff argues that Sage Point's DNMS should be
10 ignored because, rather than being sued solely in its capacity as a trustee, Sage Point is
11 instead being sued directly for its own misconduct.  ECF No. 12 at 7.  Plaintiff therefore
12 contends that Sage Point's inclusion as a defendant was neither a sham nor fraudulent.
13 As set forth below, Plaintiff offers the more persuasive argument.

14     **A.     DNMS**

15     Under California Civil Code section 2924l, a party may file a DNMS in state court
16 if the party is a trustee under a deed of trust, if the party has been named in an action in
17 which the deed of trust is the subject, and if the party reasonably believes that it has
18 been named solely in its capacity as trustee. Cal. Civ. Code § 2924l.  Any party who
19 opposes the declaration has 15 days to object, and if there is no timely objection, then
20 the trustee shall be deemed a "nominal" party.  Id.  In assessing diversity, "federal
21 court[s] must disregard "nominal" or formal parties and rest jurisdiction only upon the
22 citizenship of real parties to the controversy."  Kuntz v. Lamar Corp., 385 F.3d 1177,
23 1183 (9th Cir.2004) (quoting Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 461, 100 S. Ct.
24 1779, 64 L. Ed. 2d 425 (1980)).

25     Plaintiff initially argues that, even apart from whether it confers nominal party
26 status in state court, Sage Point's DNMS has no bearing on determining diversity in this
27 matter because it was filed pursuant to a state procedural mechanism, not a substantive
28 state law.  ECF No. 12 at 5.  Defendant, on the other hand, argues that, since Plaintiff

1  did not timely file an opposition to the DNMS, Sage Point automatically became a

2  nominal party in the superior court and so remains one here.  ECF No. 14 at 17.

3  Consequently, according to Defendants, Sage Point's citizenship should not be taken

4  into account for the purpose of determining diversity jurisdiction.  Id.

5          Because California Civil Code section 2924l's directive with regard to the impact

6  of a DNMS on nominal party status is a state procedural mechanism for establishing

7  nominal party status, approaches to its application by federal courts vary.  Some federal

8  courts have recognized nominal party status when a DNMA has been filed in state court

9  by the party at issue and has not been opposed.  See Pardo v. Sage Point Lender

10  Servs. LLC, 14–CV–305, 2014 WL 3503095, at *2 (S.D. Cal. July 14, 2014) (explaining

11  that "several district courts in California have disregarded a trustee defendant's

12  citizenship as being that of a 'nominal' defendant when that trustee defendant has

13  properly filed a Declaration of Non–Monetary Status in state court prior to removal").

14  However, when a party attempts to initially file a DNMS in federal court, district courts

15  tend to refuse to automatically deem that defendant a nominal party.  See Tran v.

16  Washington Mut. Bank, No. CIV S-09-3277 LKK/DA, 2010 WL 520878, at *1 (E.D. Cal.

17  Feb. 11, 2010).  Other district courts have concluded that the filing of a DNMS, even in

18  state court, is not dispositive of nonmonetary status and that an independent evaluation

19  of the party's status is required.  See Segura v. Wells Fargo Bank, N.A., CV-14-04195-

20  MWF AJWX, 2014 WL 4798890 (C.D. Cal. Sept. 26, 2014); Lawrence v. Aurora Loan

21  Servs. LLC, 109CV01598LJODLB, 2010 WL 449734 (E.D. Cal. Feb. 8, 2010); Hershcu

22  v. Wells Fargo Bank, N.A., 12–CV–00096, 2012 WL 439698, at *2 (S.D. Cal. Feb.10,

23  2012) (refusing to view Cal–Western's DNMS as conclusive of nominal party status);

24  Kendall v. Wells Fargo, No. CV 12–7229–DSF (PJWx), 2012 WL 10649162, at * 1 (C.D.

25  Cal. Aug. 30, 2012) (denying trustees nominal party status on the basis of a DNMS

26  because no actual showing had been made that they were nominal parties).

27          This Court agrees with the latter decisions, which evaluate a party's status under

28  federal law as opposed to state procedural rules, and therefore finds that the filing of a

1   DNMS is a state procedural requirement not controlling for purposes of determining

2   diversity.[2]  Indeed, "[a] DNMS under California Civil Code section 2924l has no corollary

3   in federal law, and does not result in a substantive finding by a court that a trustee is a

4   nominal party. Filing a DNMS requires no showing by the filing party and only represents

5   that the party has a 'reasonable belief' that it 'has been named in the action or

6   proceeding solely in its capacity as trustee, and not arising out of any wrongful acts or

7   omissions on its part in the performance of its duties as trustee.'"  Segura, 2014 WL

8   4798890 at *3.  This Court thus "understands a DNMS to be a California procedural

9   device more than a matter of substantive California law" and "under Erie R. Co. v.

10   Tompkins, 304 U.S. 64 (1938), [t]is not bound by the mechanism."  Id.  Accordingly,

11   Sage Point will not be considered a nominal Defendant based solely on the filing of a

12   DNMS.

13           **B.       Sage Point as Nominal and/or Fraudulently Joined Party**

14           Defendants alternatively argue that, even aside from its DNMS argument set forth

15   above, Sage Point must still be considered a sham and/or fraudulent defendant in this

16   action because Plaintiff has not alleged any facts that demonstrate wrongdoing sufficient

17   to support an actionable claim.  ECF No. 14 at 7.  Plaintiff, of course, disagrees and

18   contends that the Complaint contains numerous allegations of wrongdoing by Sage

19   Point.  ECF No. 12 at 7.

20           As indicated above, "federal court[s] must disregard nominal or formal parties and

21   rest jurisdiction only upon the citizenship of real parties to the controversy."  Kuntz v.

22   Lamar Corp., 385 F.3d at 1183.  Indeed, "[c]ircuit law teaches that courts should 'ignore

23   the citizenship of nominal or formal parties who have no interest in the action, and are

24   merely joined to perform the ministerial act of conveying the title if adjudged to the

25   _____

26       [2] Since the Court will not consider the DNMS, it is irrelevant that Plaintiff's objections were
     untimely.  Moreover, even if a Plaintiff fails to timely oppose a DNMS, the state procedural rules permit a
     Plaintiff to file a motion to force a defendant who has filed a declaration to nonetheless participate in the
27   action.  Cal. Civ. Code § 2924l(e).  Accordingly, even assuming the state court rules governing non-
     monetary status applied here, Plaintiff should be given the chance to raise arguments as to why Sage
28   Point is not a nominal party, which he has done in his Motion to Remand.

1   complainant.'" Silva v. v. Wells Fargo Bank, NA, 2011 WL 2437514, *3 (C.D. Cal.)

2   (quoting Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc., 304 F.3d 867, 873

3   (9th Cir. 2000)). Removing Defendants bear the burden of proving a defendant is a

4   nominal party. Id. (internal quotations and citations omitted).  Defendants have not met

5   their burden here.

6        Defendants first contend that Sage Point is a nominal defendant because it was

7   simply the trustee on the DOT.  ECF No. 14 at 8.  However, Sage Point's status as a

8   trustee is not itself sufficient to render it a nominal party.  Couture v. Wells Fargo Bank.,

9   N.A., 2011 WL 3489955, *3 (S.D. Cal.).

10        Defendants next argue that Sage Point's statutory immunities provide a sufficient

11   basis for finding that Sage Point is a nominal party.  ECF No. 14 at 8-9.  However, "such

12   statutory immunity is not absolute; a finding of malice would permit Plaintiff's claims to

13   proceed."  Latino v. Wells Fargo Bank, N.A., 2:11-CV-02037-MCE, 2011 WL 4928880

14   (E.D. Cal. Oct. 17, 2011).  In the complaint, Plaintiff alleges, among other things, that

15   Sage Point "was notified that Plaintiff submitted a complete loan modification application

16   to Ocwen before Sage Point filed the June 20, 2014 NOD . . . ."  ECF No. 1-2 at 33.

17   Such allegations, among others, support claims for wrongdoing against Sage Point such

18   that its citizenship should not be disregarded.

19        Finally, Defendants contend that Sage Point has been fraudulently joined by

20   Plaintiff solely to destroy diversity.  "Joinder of a non-diverse defendant is deemed

21   fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of

22   determining diversity, '[i]f the plaintiff fails to state a cause of action against a resident

23   defendant, and the failure is obvious according to the settled rules of the state.'"  Morris

24   v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir. 2001) (quoting McCabe v.

25   General Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987)).  In this circuit, there is a

26   "general presumption against fraudulent joinder," and defendant's burden of proof is

27   "heavy."  Hunter v. Philip Morris USA, 582 F.3d 1039, 1046 (9th Cir. 2009).  Simply

28   alleging that Plaintiff has failed to state a claim pursuant to the Federal Rules of Civil

1    Procedure is not enough.  See Watson v. Gish, 2011 WL 2160924, *3 (N.D. Cal.).

2    Instead, "[i]n the Ninth Circuit, a non-diverse defendant is deemed to be fraudulently

3    joined [only] if, after all disputed questions of fact and all ambiguities in the controlling

4    state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover

5    against the party whose joinder is questioned."  Sun v. Bank of American Corp., 2010

6    WL 454720, *3 (C.D. Cal.) (citing Kruso v. Int'l Tel. & Tel. Corp., 872 F.2d 1416, 1426

7    (9th Cir. 1989)).

8           "A court may look beyond the pleadings to determine if a defendant is fraudulently

9    joined, but a plaintiff need only have one potentially valid claim against a non-diverse

10   defendant to survive a fraudulent joinder challenge."  Id. (internal citations and

11   quotations omitted).  "Accordingly, a defendant seeking removal based on an alleged

12   fraudulent joinder must do more than show that the complaint at the time of removal fails

13   to state a claim against the non-diverse defendant."  Id.  To the contrary, "[r]emand must

14   be granted unless the defendant shows that the plaintiff would not be afforded leave to

15   amend his complaint to cure [the] purported deficiency."  Id. (internal quotations and

16   citations omitted).

17          Defendants in this case thus bear the burden of showing that it is "obvious" that

18   Plaintiff cannot possibly state a claim against Sage Point.  On balance, Defendants

19   cannot meet this burden.  Plaintiff's allegations that Sage Point was on notice of

20   Plaintiff's loan modification process, and that Defendants acted "fraudulently" and

21   knowingly, and "with oppression, fraud and malice" toward Plaintiff, support claims for

22   wrongdoing against Sage Point.  See ECF No. 1-2 at 28.  Since Defendants have failed

23   to meet their burden of showing there is no possibility Plaintiff could establish a cause of

24   action against Sage Point, they have not shown that Sage Point's joinder was fraudulent.

25   Accordingly, because Defendants have failed to show that Plaintiff and Sage Point are

26   non-diverse, Plaintiff's Motion to Remand is GRANTED.

27   ///

28   ///

1

**CONCLUSION**

2

3        For the reasons just stated, Plaintiff's Motion to Remand (ECF No. 12) is

4   GRANTED.  Defendant's Motion to Dismiss (ECF No. 4) is DENIED as moot.  The Clerk

5   of the Court is directed to remand this case to the originating state court, the Superior

6   Court of the State of California in and for the County of San Joaquin, for final

7   adjudication and to close this case.

8        IT IS SO ORDERED.

9   Dated:  November 18, 2014

10

11                                                    _____
                                                      MORRISON C. ENGLAND, JR., CHIEF JUDGE
12                                                    UNITED STATES DISTRICT COURT

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28